UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

——————————————————
                                        )
KATALIN KADAR LYNN,                     )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    Civil Action No. 18-00587 CKK
                                        )
NATIONAL ARCHIVES AND                   )
RECORDS ADMINISTRATION,                 )
                                        )
        Defendant.                      )
——————————————————)

<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This is a Freedom of Information Act case.  Plaintiff is writing a biography

of Tibor Eckhardt (1888-1972), a prominent Hungarian diplomat and politician

during the interwar years.  She brought this action after the National Archives and

Records Administration ("NARA") denied her request for access to ten classified

documents in its collection of Central Intelligence Agency ("CIA") documents

relating to the so-called Grombach Organization, which was a secret American

intelligence operation that began in 1942 under the Army's control.  After the war,

it continued under the Army's control until 1947, then under the State

Department's control, and finally as a CIA contractor.  It ceased most operations in

1955.  *See* NARA's Catalog, Grombach Organization, 1942-1955.

The ten documents were referred to the CIA for classification review.  That review determined that all ten still qualify as national security information that is exempt, in its entirety, from release under the FOIA.

Defendant hereby moves for summary judgment.  As grounds for this motion, defendant asserts that there are no genuine issues of material fact in dispute and that it is entitled to judgment in its favor as a matter of law.  In support of this motion, defendant is submitting herewith its statement of material facts not in genuine dispute, a memorandum of points and authorities with supporting declarations, and a proposed order reflecting the requested relief.  (This motion and its attachments are paginated continuously so that its pagination corresponds with the pagination assigned by the ECF system.)

<div style="margin-left:40%">

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

BY:  /s/ *Fred E. Haynes*
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C.  20530
202.252.2550
fred.haynes@usdoj.gov

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
KATALIN KADAR LYNN,                       )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )    Civil Action No. 18-00587 CKK
                                          )
NATIONAL ARCHIVES AND                     )
RECORDS ADMINISTRATION,                   )
                                          )
        Defendant.                        )
_____)

DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendant submits the following statement of material facts as to which

there is no genuine issue:

1.  By a letter dated November 4, 2014, plaintiff submitted a FOIA request

to NARA's Chief, Military Reference Branch, Textual Reference Division, in

College Park, Maryland, seeking ten classified documents found in the "Central

Intelligence Agency: Group 263: Records of the Grombach Organization" for use

in connection with a biography of Tibor Eckhardt she was writing.  Exhibit A

hereto, declaration of David J. Mengel, ¶ 9.

2.  Plaintiff's request identified the ten documents she sought by their box

number in the series "Subject and Country Files or Requirements, Directives and

Correspondence: 1945-1955 Series 3," the folder title, document date (where available), and other identifying information. *Id*.

3.  Record Group 263, the record group in which the ten requested documents are located, consists of records accessioned to NARA from the CIA, *id*. ¶ 8, and the ten documents plaintiff requested were designated as restricted access due to their classification status, meaning they are not open and available to the public, *id*. ¶ 12.

4.  NARA can only declassify national security information under the direction of the equity agency's declassification authority.  As such, in instances in which NARA's archival holdings contain information that it cannot declassify, it must consult with the agency, in this case the CIA, having declassification authority to determine whether or not access can be provided to the record.  *Id*.

5.  By a letter dated June 30, 2017, NARA asked the CIA to review the ten documents to determine whether their classification remained warranted.  *Id*. ¶ 13.

6.  By a letter dated October 25, 2017, the CIA informed NARA that the release of the ten documents must be denied in their entirety on the basis of FOIA Exemptions 1, 5 U.S.C. § 552(b)(1), and 3, 5 U.S.C. § 552(b)(3), where the relevant statutes are Central Intelligence Agency Act of 1949 and the National Security Act of 1947.  *Id*. ¶ 14.

7.  By a letter dated December 8, 2017, NARA informed plaintiff that the CIA had determined that all ten documents, totaling 733 pages, were being withheld in their entirety pursuant to FOIA Exemptions 1 and 3.  *Id.* ¶ 15.

8.  The letter stated that "Exemption 1 protects from disclosure information concerning the national defense or foreign policy that is currently and properly classified under Executive Order 13,526, Section 1.4."  *Id.*

9.  With respect to Exemption 3, the letter stated that information was withheld that is exempt from release by statute.  In this instance, the pertinent statutes are Section 6 of the Central Intelligence Agency Act of 1949 and Section 102A(i)(l) of the National Security Act of 1947.  The letter also informed Plaintiff of her appeal rights.  *Id.*

10.  By letter dated January 30, 2018, plaintiff, through counsel, submitted an appeal of the decision to withhold the 10 documents in their entirety.  *Id.* ¶ 16.

13.  Attached hereto as Exhibit B is the declaration of Antoinette B. Shiner, an Information Review Officer in the CIA, who holds original classification authority at the TOP SECRET level under written delegation of authority pursuant to section l.3(c) of Executive Order 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010). Exhibit B, ¶ 3.

14.  Ms. Shiner is authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the

classification criteria of Executive Order 13,526 and applicable regulations.  *Id.*

15.  Based on FOIA Exemptions 1 and 3, the CIA withheld in full all ten documents referred to it by NARA.  *Id.* ¶ 6.

16.  Exemption 1 provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).

17.  Ms. Shiner determined that the ten documents withheld in full pursuant to Exemption 1 are currently and properly classified and satisfy the procedural and the substantive requirements of Executive Order 13,526, which governs their classification.  *Id.* ¶ 7.

18.  The information in these documents falls under classification category § 1.4(c) of the Executive Order because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and its unauthorized disclosure could reasonably be expected to result in damage to national security.  *Id.* ¶ 8.

19.  Although the CIA information being withheld is more than 50 years old, Section 3.3(h)(1) of Executive Order 13,526 exempts from the automatic 50 year declassification records that contain information that would "clearly and

demonstrably" reveal the identity of a confidential human source or human intelligence source.  *Id.* ¶ 9.

20.  Additionally, Section 3.3(h)(2) provides that "in extraordinary cases" agency heads may "propose to exempt additional specific information from declassification at 50 years."  *Id.*

21.  The additional information that CIA proposed to exempt is included in the CIA Declassification Guide (the "Guide"), dated 26 September 2012. This Guide was approved by the Interagency Security Classification Appeals Panel, as provided by Section 3.3(j) of the Executive Order.  *Id.*

22.  In addition to information that remains exempt from declassification under Section 3.3(h)(1), the approved CIA Guide exempts select sensitive information that could reveal, among other things, an intelligence method in active use, including the methods used for intelligence source recruitment, vetting, handling, training and assessing, and details of the cover mechanisms used by the CIA to protect the identities of covert officers.  *Id.* ¶ 10.

23.  Nine of the ten records referred by NARA contain detailed information about human sources, which could clearly and demonstrably reveal their identities; and all of the documents contain information that could reveal an intelligence method in active use.  *Id.* ¶ 11.

24.   Therefore, Ms. Shiner determined that, not withstanding their age, the documents not only remain currently and properly classified but also are exempt from mandatory declassification under Section 3.3(h) of Executive Order 13,526. *Id.*

25.   Nine of the records referred by NARA contain lists of intelligence sources, which include sufficient identifying information to compromise the sources and their sub-sources, including nationalities, professions, reporting specialties, locations, and the activities they engaged in on behalf of the CIA.  *Id.* ¶ 12.

26.   The CIA's primary mission is to collect foreign intelligence through human sources and by other means and to analyze and disseminate foreign intelligence and counterintelligence.  To accomplish this, the CIA relies on clandestine human sources with access to foreign intelligence, and it does so with the promise that the CIA will keep this information and their identities secret. Intelligence sources can be expected to furnish information only when confident that they are protected from harm, retribution, harassment, or embarrassment by the secrecy surrounding their CIA relationship.  *Id.*

27.   Foreign nationals who cooperate with the CIA do so almost always without the knowledge of their government. The safety and welfare of the source, and his or her family or associates, could be jeopardized if the CIA disclosed

information that could reveal the identity of the source and his or her affiliation with the CIA. This risk remains even if the intelligence source no longer actively cooperates with the CIA.  *Id.*

28.  Moreover, the release of information which identifies an intelligence source may be expected to hamper the cooperation of other sources, which can have a serious effect on the CIA's ability to continue to recruit and run sources.  *Id.* ¶ 13.

29.  The inability to recruit and retain intelligence sources, and the accompanying loss of the critical intelligence which they provide, would seriously and adversely affect U.S. national security.  *Id.*

30.  The documents at issue in this case contain information about intelligence methods currently used to recruit, vet, handle, train, and assess intelligence sources, as well as detailed information about a cover mechanism currently used by the CIA to protect the identities of covert officers.  Disclosure of these details would likely impair the CIA's ability to continue to collect intelligence and conduct operations.  *Id.* ¶ 14.

31.  Once the nature of an intelligence method or the fact of its use in a certain situation is discovered, its usefulness in that situation is compromised and the CIA's ability to apply that method in other situations is significantly degraded. *Id.*

32.  The National Security Act, 50 U.S.C. § 3024(i) (1), also applies to the ten documents. The National Security Act provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure."  *Id.* ¶ 18.

33.  Exemption 3 in conjunction with the National Security Act applies to all of the information protected by Exemption 1, described above, because the information would reveal specific sources and methods of intelligence collection, i.e., the information either reveals specific sources of foreign intelligence and/or certain intelligence techniques that are still in use by the Agency.  *Id.* ¶ 18.

34.  In evaluating the ten documents, the CIA conducted a document-by-document and line-by-line review and determined that there was no reasonably segregable non-exempt information that could be released.  *Id.* ¶ 19.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  */s/ Fred E. Haynes*
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
fred.haynes@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
KATALIN KADAR LYNN,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    Civil Action No. 18-00587 CKK
                                   )
NATIONAL ARCHIVES AND              )
RECORDS ADMINISTRATION,            )
                                   )
        Defendant.                 )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff sought access to ten classified documents that exist in the NARA's

collection of records relating the Grombach Organization.  Record Group 263, the

record group in which the ten requested documents are located, consists of records

accessioned to NARA from the Central Intelligence Agency, and the ten

documents were referred to it for a determination as to whether they remained

exempt from release under the FOIA.  The CIA's review found that the ten

documents, in their entirety, remain exempt from release under FOIA Exemptions

1 and 3.  5 U.S.C. § 552(b)(1) and (b)(3).  For the reasons explained in Exhibit B

hereto, the declaration of a CIA Information Review Officer, Antoinette B. Shiner,

the decision to withhold the ten documents was correct.  Summary Judgment

should, therefore, be granted in favor of defendant.

## I.  Statement Of Facts

Defendant incorporates herein the preceding statement of material facts as to

which there is no genuine issue ("Statement of Material Facts").

## II.  Legal Standard

"FOIA mandates broad disclosure of government records to the public,

subject to nine enumerated exemptions." *Wolf v. CIA,* 473 F.3d 370, 374 (D.C. Cir.

2007) (citation omitted).  Exemption1 protects matters "specifically authorized

under criteria established by an Executive order to be kept secret in the interest of

national defense or foreign policy and ... in fact properly classified pursuant to

such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3 covers matters

"specifically exempted from disclosure by statute," provided that such statute

leaves no discretion on disclosure or "establishes particular criteria for withholding

or refers to particular types of matters to be withheld." *Id.,* § 552(b)(3). These

exemptions cover not only the content of protected government records but also

the fact of their existence or nonexistence, if that fact itself properly falls within the

exemption.  (This summarization of the law is taken from *Larson v. Dep't of State*,

565 F.3d 857, 861 (D.C. Cir. 2009).)

The federal agency defendant in a FOIA case is entitled to summary judgment if it can demonstrate that there exists no genuine issue of material fact with regard to the agency's compliance with the statute, *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994), with the facts viewed in the light most favorable to the requester, *Weisberg  v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984).  An agency that has withheld information or refused to confirm or deny that it possesses such information can carry its burden on summary judgment by affidavit or declaration.  *See Larson*, 565 F.3d at 862.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf*, 473 F.3d at 374-75.

## III.  Argument

The legislative history of the FOIA makes clear that "courts must 'recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record.'"  *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).  Courts therefore generally defer to the expert opinion of the agency in this area, reasoning that judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (high degree of

deference to be paid to agency's classification judgment);[1] *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (court must accord substantial weight to the agency's affidavit concerning the details of the classified status of the disputed record). Thus, an agency's invocation of Exemptions 1 and 3 will ordinarily be upheld if the agency's affidavits are sufficiently specific and there is no evidence of bad faith.  *See Public Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002).

Exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1), provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  The Executive order on classification that controls this case is Executive Order 13,526, which provides that information shall be considered for classification if it falls within one (or more) of eight specifically enumerated categories of information.  The categories of classified information at

---

[1]  *See also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) ("substantial weight [must be given] to agency statements"); *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) ("utmost deference"); S. Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 12, reprinted in 1974 U.S. Code Cong. & Admin. News 6285, 6290 ("[T]he conferees expect the Federal courts, in making de novo determinations in section 552(b)(1) cases . . . will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.").

issue here are those found in Section 1.4(c), which include intelligence activities and intelligence sources and methods.

As explained in the Statement of Material Facts ¶ 23, "[n]ine of the ten records referred by NARA contain detailed information about human sources, which could clearly and demonstrably reveal their identities; and all of the documents contain information that could reveal an intelligence method in active use, " citing to the Exhibt B hereto, the declaration of Antoinette B. Shiner, an Information Review Officer at the CIA, at ¶ 11.  These records are of a nature that qualify for protection under Exemption1.

Executive Order 13,526 provides that all records should be declassified after 50 years.  Although the records at issue here are more than 50 years old, they remain exempt from release under Section 3.3(h)(1) of Executive Order 13,526, which exempts from the automatic 50 year declassification requirement any records that contain information that would "clearly and demonstrably" reveal the identity of a confidential human source or human intelligence source.  Statement of Material Facts, ¶ 19.

Additionally, Section 3.3(h)(2) provides that "in extraordinary cases" agency heads may "propose to exempt additional specific information from declassification at 50 years."  *Id.*, ¶ 20.  The CIA has done this, and the additional information that the CIA proposed to exempt is included in the CIA

Declassification Guide (the "Guide"), dated 26 September 2012. This Guide was approved by the Interagency Security Classification Appeals Panel, as provided by Section 3.3(j) of the Executive Order. *Id.* 21.

In addition to information that remains exempt from declassification under Section 3.3(h)(1), the approved CIA Guide exempts select sensitive information that could reveal, among other things, an intelligence method in active use, including the methods used for intelligence source recruitment, vetting, handling, training and assessing, and details of the cover mechanisms used by the CIA to protect the identities of covert officers. *Id.* ¶ 22. The documents withheld by the CIA under Exemption 1 qualify for that exemption and were properly withheld from release to plaintiff.

Pursuant to Exemption 3, 5 U.S.C. § 552(b)(3), information may be withheld in response to a FOIA request if the information is "specifically exempted from disclosure by statute . . . [provided that such statute] (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 3 was promulgated in recognition of other, agency-specific statutes limiting the disclosure of information held by an agency, and it incorporates those statutes within the exemptions to FOIA. *See Balridge v. Shapiro*, 455 U.S. 345, 352-353 (1982);

*Essential Information, Inc. v. U.S. Information Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998).

Under Exemption 3, judicial review is limited to: (1) whether the withholding statute qualifies as an Exemption 3 statute, and (2) whether the withheld material satisfies the criteria of the exemption statute. *See CIA v. Sims,* 471 U.S. 159, 167 (1985); *Fitzgibbon v. CIA,* 911 F.2d 755, 761 (D.C. Cir. 1990). Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1) (the "National Security Act"), provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." The National Security Act qualifies as an Exemption 3 statute. *CIA v. Sims,* 471 U.S. at 180; *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). The intelligence sources and methods withheld from release to plaintiff qualify for such withholding under Exemption 3. *See* Statement of Material Facts ¶¶ 32, 33.

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Here, the CIA conducted a document-by-document and line-by-line review of the ten withheld documents and determined that there was no reasonably segregable non-exempt information that could be released. Statement of Material Facts ¶ 34.

IV. <u>Conclusion</u>

For the reasons set forth above, defendant's motion for summary judgment

should be granted.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  */s/ Fred E. Haynes*
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
<u>fred.haynes@usdoj.gov</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

KATALIN KADAR LYNN,

      Plaintiff,

v.                                                        Civil Action No. 18-00587 CKK

NATIONAL ARCHIVES AND
RECORDS ADMINISTRATION,

      Defendant.
_____

## ORDER

Upon consideration of defendant's summary judgment motion and the response thereto, it is this _____ day of _____, 2018,

ORDERED that the motion is granted; and it is further

ORDERED that this case is dismissed with prejudice.  This is a final, appealable order.

UNITED STATES DISTRICT JUDGE