IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATALIN KADAR LYNN,                )
                                   )
    Plaintiff,                     )
                                   )
        v.                         )        Civ. A. No. 18-CV-0587 (CKK)
                                   )
NATIONAL ARCHIVES AND              )
RECORDS ADMINISTRATION,            )
                                   )
    Defendant.                     )
                                   )

## DECLARATION OF DAVID J. MENGEL

I, David J. Mengel, under 28 U.S.C. § 1746, hereby declare and state as follows:

1.  My title is Deputy Director, but I am currently serving as the Acting Director of the National Declassification Center (NDC), National Archives and Records Administration ("NARA") located in College Park, Maryland. I have held this position of Deputy Director since 21 November 2010. Prior to this position I was Chief of the Special Access and FOIA staff. I hold a Bachelor of Arts degree in History from James Madison University.

2.  In my current position I supervise the day-to-day operations of the NDC. The NDC is focused on the identification, review, and release of Classified National Security Information (CNSI). Operations include working with representatives from other Federal agencies to review records for declassification, responding to public access requests under the Freedom of Information Act (FOIA) and the mandatory review provisions of Executive Order 13526 (EO 13526), and processing declassified records for release to the public. The staff consists of approximately sixty individuals ranging from entry level GS-5 Technicians to

experienced archives specialists, archivists, and managers, most with decades of experience handling classified materials.

3.     Due to the nature of my official duties, I am familiar with the procedures followed by NARA in responding to requests for records from its archival collections that contain CNSI as defined under EO 13526 and pursuant to the provisions of the FOIA, 5 U.S.C. § 552.  I am also specifically aware of the handling of the FOIA request at issue in this case and have been apprised of this litigation by NARA agency counsel.

4.     The statements contained in this declaration are based upon my personal knowledge, upon information furnished to me in the course of my official duties, and upon conclusions and determinations reached and made in accordance therewith.

5.     The purpose of this declaration is to support NARA's motion for summary judgment and to provide details regarding how NARA responded to plaintiff's FOIA request.

### National Archives and Records Administration and its Holdings

6.     The National Archives was established in 1934 under President Franklin Roosevelt to preserve and care for the permanent records of the U.S. Government, but its major holdings date back to 1775.  NARA's archival records contain the sweep of the past: the Declaration of Independence and the U.S. Constitution; slave ship manifests and the Emancipation Proclamation; captured German records and the Japanese surrender documents from World War II; journals of polar expeditions and photographs of Dust Bowl farmers; Indian treaties making transitory promises; and a richly bound document bearing the bold signature "Bonaparte" — the Louisiana Purchase Treaty that doubled the territory of the young republic.

7.     In 1985, NARA became an independent establishment in the Executive branch, and it now has over 40 facilities nationwide including field archives, Federal Records Centers,

Presidential Libraries, the Office of the Federal Register, the Office of Government Information

Services, and the National Historical Publications and Records Commission.  NARA keeps only

those Federal records that are judged to have permanent archival value — roughly two to five

percent of those generated in any given year.  By now, they add up to a formidable number,

diverse in form as well as in content. There are approximately 12-14 billion pages of textual

records; millions of maps, charts, architectural and engineering drawings, still and aerial

photographs and graphics, hundreds of thousands of reels of motion picture film, video and

sound recordings; and hundreds of terabytes of electronic data. The National Archives preserves

all of these records because they are essential to the workings of Government, have long-term

research value, and provide information of value to citizens.[1]

      8.     NARA's holdings are organized by the major government entity, usually a bureau

or an independent agency, that created or maintained the records.  Each government entity is

assigned a numbered "record group" (RG).  For example, records that NARA receives from the

Central Intelligence Agency are in Record Group 263:  Records of the Central Intelligence

Agency.   Record groups usually include not only the records of the organization named in the

title but also often the records of any predecessors of the organization and may combine the

records of several small or short-lived agencies.  The number assigned to a record group reflects

the order in which it was established by the National Archives.  Within a record group, the

records are organized into "series" arranged according to the creating office's filing system, such

as by subject or function, activity, transaction, or physical form, and maintained by NARA in

numbered boxes.[2]  Documents are typically further described within each numbered box at the

---

[1] *See* http://www.archives.gov/publications/general-info-leaflets/1-about-archives.html.

[2] *See* https://www.archives.gov/research/guide-fed-records/index-numeric/concept.html

folder level. Once a box has been processed or reviewed to provide access to the public, any document within a folder that cannot be provided to the public in full will be provided in redacted form, or, if the entire document is being withheld, it will be replaced by a "withdrawal sheet" that provides details about the particular document to which access has been restricted.

### Plaintiff's FOIA Request

9.      By letter dated November 4, 2014, Plaintiff submitted a FOIA request to NARA's Chief, Military Reference Branch, Textual Reference Division in College Park, Maryland. *See* **Exhibit A.** Plaintiff indicated that she was seeking "Records of the Central Intelligence Agency: Group 263: Records of the Grombach Organization" in connection with the biography she was writing of Tibor Eckhardt; she provided a detailed list of the exact documents to which she wanted access. *Id.* In her request, Plaintiff indicated that she wanted access to the material from RG 263 that was not previously de-classified, "as these missing elements cannot be found in any other archive, except in a fragmentary manner are necessary to write the story of Eckhardt's history with the Grombach Organization." *Id.* Specifically, Plaintiff's request identified the ten documents she requested by the box number in the series (Subject and Country Files or Requirements, Directives and Correspondence: 1945-1955 Series 3), the folder title, document date (where available), and other identifying information. *Id.*

10.     The request was received by NARA on November 14, 2014, assigned FOIA tracking number NW 44667, and assigned to the NDC for processing and response to the requester. *See* **Exhibit A.**

11.     Through a series of e-mails dated November 20, 2014, the Deputy Director of the NDC's FOIA and Mandatory Declassification Review (MDR) office reached out to Plaintiff

seeking clarification regarding the best contact information to reach the requester and informing

the requester that there were approximately 250 cases ahead of hers in the processing queue,

such that it would likely take 12 months before the NDC would begin to process the case. *See*

**Exhibit B.**

12.    The ten documents Plaintiff requested were designated as restricted due to their

classification status, meaning they are not fully open and available to the public.  NARA can

only declassify CNSI under the direction of the equity agency's declassification authority.  As

such, in instances in which NARA's archival holdings contain information that it cannot

declassify, it must consult with the agency having declassification authority to determine

whether or not NARA can make the record available to the public record.  In this case, the CIA

is the agency with whom NARA consulted to determine what could be provided to the requester.

13.    By letter dated June 30, 2017, NARA consulted with the CIA to determine

whether any of the ten requested documents remained classified.

14.    By letter dated October 25, 2017, the CIA informed NARA that the ten

documents remained classified in their entirety, and therefore must be withheld from the

requester on the basis of FOIA exemptions (b)(1) and (b)(3), where the relevant statutes are

Section 6 of the Central Intelligence Agency Act of 1949, as amended and Section 102A(i)(l) of

the National Security Act of 1947, as amended.

15.    By letter dated December 8, 2017, NARA informed Plaintiff that the CIA had

determined that all ten documents totaling 733 pages were being withheld in their entirety

pursuant to FOIA exemptions (b)(1) and (b)(3).  The letter indicated that "Exemption 1 protects

from disclosure information concerning the national defense or foreign policy that is currently

and properly classified under Executive Order 13526, Section 1.4."  With respect to Exemption

3, the letter indicated that information was withheld "that is exempt from release by statute. In this instance, the pertinent statutes are Section 6 of the Central Intelligence Agency Act of 1949, as amended, and Section 102A(i)(l) of the National Security Act of 1947, as amended." The letter also informed Plaintiff of her appeal rights. *See* **Exhibit C.**

16.     By letter dated January 30, 2018, Plaintiff, through counsel, submitted an appeal of the decision to withhold the 10 documents requested in their entirety pursuant to Exemption 1 and Exemption 3. *See* **Exhibit D.**

17.     NARA acknowledged receipt of the Plaintiff's appeal by email dated January 30, 2018 and informed her counsel that the appeal had been assigned NGC18-29A. *See* **Exhibit E.**

18.     After receipt of the appeal, NARA subsequently re-consulted with CIA regarding the decision to withhold the records pursuant to FOIA exemptions (b)(1) and (b)(3) on February 6, 2018.

19.     Plaintiff filed her lawsuit on March 20, 2018 before NARA had a chance to respond to the appeal.

## NARA'S SEARCH FOR RESPONSIVE RECORDS AND CONSULTATION WITH CIA

20.     NARA conducted a search reasonably calculated to locate responsive records to Plaintiff's FOIA request. In this case, Plaintiff's FOIA request specifically identified the ten documents she wanted access to within NARA's holdings based on NARA's description of the documents. As such, NARA was able to easily locate all records responsive to Plaintiff's FOIA request through a search of the specified boxes, folders, and withdrawn records identified within its CIA records collection.

21.     As previously indicated, when NARA's archival holdings contain national security information that it cannot declassify, it must consult with the agency having

-6-

declassification authority to determine whether or not access can be provided to the record. In this instance, CIA is the equity agency with declassification authority for the information in the ten documents requested by Plaintiff. CIA informed NARA that the information remained classified and continued to warrant protection. Accordingly, the ten documents requested by Plaintiff were withheld in their entirety pursuant to FOIA exemptions (b)(1) and (b)(3) on behalf of the CIA. The CIA has provided a declaration justifying its withholdings on this basis. *See* Declaration of Antoinette B. Shiner, Information Review Officer for the Litigation Information Review Office, Central Intelligence Agency dated August 9, 2018.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through E are true and correct copies.

Executed this 9th day of August, 2018.

David J. Mengel
Deputy Director
National Declassification Center
National Archives and Records Administration
College Park, Maryland