IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATALIN KADAR LYNN,<br><br>          Plaintiff,<br>     v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>          Defendant. | Case No. 18-cv-587-CKK |

DECLARATION OF ANTOINETTE B. SHINER
INFORMATION REVIEW OFFICER
FOR THE LITIGATION INFORMATION REVIEW OFFICE
CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

## I.   INTRODUCTION

1.   I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency"). I have held this position since 19 January 2016. I have worked in the information review and release field since 2000.

2.   Prior to becoming the IRO for LIRO, I served as the IRO for the Directorate of Support ("DS") for over sixteen months. In that capacity, I was responsible for making classification and release determinations for information originating within the DS. Prior to that, I was the Deputy IRO for the Director's Area of the CIA ("DIR Area") for over three years. In that role, I was responsible for making

1

classification and release determinations for information originating within the DIR Area. Before assuming that role, I was a reviewer in the DS for seven months, where I performed research and provided input and recommendations on classification and release decisions. Prior to that position, I worked in the Public Information Program Division ("PIPD") within the Information Management Services ("IMS") Group for over ten years engaged in all aspects of FOIA case management. Before transitioning to the area of information review and release, I worked as a paralegal and held various administrative positions within the Office of General Counsel for over thirteen years.

3.  I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

4.  Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for

information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

5. This declaration supports the government's Motion for Summary Judgment in this case. The purpose of this declaration is to provide the Court with a detailed description of the records at issue and to justify the CIA's invocation of FOIA exemptions 1 and 3 to protect certain classified and national security information. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

6. I understand that the National Archives and Records Administration ("NARA") received a FOIA request from plaintiff dated November 4, 2014, seeking "[r]ecords of the Central Intelligence Agency: Group 263: Records of the Grombach Organization." On June, 30, 2017, NARA referred to the CIA for review ten documents that NARA had identified as responsive to the Plaintiff's FOIA request. Based on FOIA Exemptions 1 and 3, the CIA withheld in full all ten documents.

I. **EXEMPTIONS CLAIMED**

   A. **EXEMPTION 1**

7. Exemption 1 provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the ten documents withheld in full pursuant to Exemption 1 are currently and properly classified and, as described below, satisfy the procedural and the substantive requirements of Executive Order 13526, which governs classification. *See* E.O. 13526 § 1.1(a), § 1.4(c).

8. Specifically, this information is owned by, and is under the control of, the U.S. Government. As further detailed below, the information in these documents also falls under classification category § 1.4(c) and of the Executive Order because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and its unauthorized disclosure could reasonably be expected to result in damage to national security. None of the information at issue has been classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.

9. As an initial matter, although the CIA information being withheld is more than 50 years old,[1] Section 3.3(h)(1) Of Executive Order 13526 exempts from automatic declassification at 50 years records that contain information that would "clearly and demonstrably" reveal the identity of a confidential human source or a human intelligence source. Additionally, Section 3.3(h)(2) provides that "in extraordinary cases" agency heads may "propose to exempt additional specific information from declassification at 50 years." The additional information that CIA proposed to exempt is included in the CIA Declassification Guide (the "Guide"), dated 26 September 2012. This Guide was approved by the Interagency Security Classification Appeals Panel, as provided by Section 3.3(j) of the Executive Order.[2]

10. In addition to information that remains exempt from declassification under Section 3.3(h)(1), the approved CIA Guide exempts select sensitive information that could reveal, among other things, an intelligence method in active use, including the methods used for intelligence source recruitment, vetting,

---

[1] Section 3.3(h) of Executive Order 13526 states that all records exempted from automatic declassification under Section 3.3(b) "shall be declassified on December 31 of a year that is no more than 50 years from the date of origin."

[2] "At least 1 year before information is subject to automatic declassification under this section, an agency head or senior agency official shall notify the Director of the Information Security Oversight Office, serving as Executive Secretary of the Panel, of any specific information that the agency proposes to exempt from automatic declassification under paragraphs (b) and (h) of this section."

5

handling, training, and assessing; and details of the cover mechanisms used by the CIA to protect the identities of covert officers.

11. Nine of the ten records referred by NARA contain detailed information about human sources, which could clearly and demonstrably reveal their identities; and all of the documents contain information that could reveal an intelligence method in active use. As described below, there is no segregeable, nonexempt information in the documents that is not classified and statutorily protected. Therefore, I have determined that, notwithstanding their age, the documents not only remain currently and properly classified but also are exempt from mandatory declassification under Section 3.3(h).

**Damage to National Security from Disclosure**

12. *Human Sources.* As mentioned above, nine records referred by NARA contain detailed information about human intelligence sources. These documents contain lists of intelligence sources, which include sufficient identifying information to compromise the sources and their sub-sources, including nationalities, professions, reporting specialties, locations, and the activities they engaged in on behalf of the CIA. The CIA's primary mission is to collect foreign intelligence through human sources and by other means and to analyze and disseminate foreign intelligence and

6

counterintelligence. To accomplish this, the CIA relies on clandestine human sources with access to foreign intelligence, and it does so with the promise that the CIA will keep this information and their identities secret. Intelligence sources can be expected to furnish information only when confident that they are protected from harm, retribution, harassment, or embarrassment by the secrecy surrounding their CIA relationship. Foreign nationals who cooperate with the CIA do so almost always without the knowledge of their government. The safety and welfare of the source, and his or her family or associates, could be jeopardized if the CIA disclosed information that could reveal the identity of the source and his or her affiliation with the CIA. This risk remains even if the intelligence source no longer actively cooperates with the CIA.

13. Moreover, the release of information which identifies an intelligence source may be expected to hamper the cooperation of other sources, which can have a serious effect on the CIA's ability to continue to recruit and run sources. If the CIA were to breach the trust and confidentiality upon which these relationships are formed, current and potential sources around the world could surmise that the CIA is unable or unwilling to maintain confidentiality. The inability to recruit and retain intelligence sources, and the accompanying loss of the critical

intelligence which they provide, would seriously and adversely affect U.S. national security.

14. *Intelligence Methods*. The documents at issue in this case contain information about intelligence methods currently used to recruit, vet, handle, train, and assess intelligence sources; as well as detailed information about a cover mechanism currently used by the CIA to protect the identities of covert officers. Disclosure of these details would likely impair the CIA's ability to continue to collect intelligence and conduct operations. Intelligence methods are the means by which an intelligence agency accomplishes its objectives. Intelligence methods must be protected to prevent foreign adversaries, terrorist organizations and others from learning about the ways in which the CIA operates, which could allow them to take measures to hide their activities from the CIA. Disclosing details about operational tradecraft, complicates the Agency's ability to collect foreign intelligence around the world. Clandestine information collection methods are valuable from an intelligence-gathering perspective only so long as they remain unknown and unsuspected. Once the nature of an intelligence method or the fact of its use in a certain situation is discovered, its usefulness in that situation is compromised and the CIA's ability to apply that method in other situations is significantly degraded.

15. For these reasons, I have determined that the referred records in this case are currently and properly classified. The release of this information could significantly impair the CIA's ability to carry out its core missions of gathering and analyzing foreign intelligence and counterintelligence and conducting intelligence operations; and therefore damage national security.

B. **EXEMPTION 3**

16. Exemption 3 protects information that is specifically exempted from disclosure by statute. A withholding statute under Exemption 3 must (A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

17. Here, the National Security Act, as amended, 50 U.S.C. § 3024(i)(1) applies to the documents that were withheld in full. The National Security Act provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." I note that this provision of the National Security Act has been widely recognized by courts to constitute a withholding statute in accordance with Exemption 3.

9

18. Exemption (b)(3) in conjunction with the National Security Act applies to all of the information protected by Exemption (b)(1), described above, because the information would reveal specific sources and methods of intelligence collection – i.e., the information either reveals specific sources of foreign intelligence and/or certain intelligence techniques that are still in use by the Agency.

## III. **SEGREGABILITY**

19. In evaluating the responsive documents, the CIA conducted a document-by-document and line-by-line review and determined that there was no reasonably segregable non-exempt information that could be released. All of the information in the referred documents is jointly protected by Exemption 1 and 3. After reviewing all of the records at issue, I have determined that no information can be released without jeopardizing classified and statutorily-protected material.

* * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of August 2018.

*Antoinette B. Shiner*
Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency