# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KATALIN KADAR LYNN,
    Plaintiff

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,
    Defendant

Civil Action No. 18-587 (CKK)

**Memorandum Opinion**
(February 7, 2019)

    This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiff Katalin Lynn made to Defendant National Archives and Records Administration ("NARA"). Plaintiff requested ten classified documents, totaling 733 pages, relating to the so-called Grombach Organization, a secret American intelligence operation which functioned between 1942 and 1955. Plaintiff requested these documents for a biography that she is writing on Tibor Eckhardt, a Hungarian diplomat who provided the United States with intelligence in coordination with Army Captain John Grombach, leader of the Grombach Organization.

    In response to Plaintiff's FOIA request, Defendant located the ten requested documents. As the documents were designated restricted status, Defendant sought direction from the Central Intelligence Agency ("CIA") as to whether or not access could be provided to the documents. The CIA informed Defendant that access to the ten documents must be denied in their entirety on the basis of FOIA Exemptions 1 and 3 as the records concern intelligence activities, sources, and methods the disclosure of which would risk damaging national security. Defendant in turn withheld in full the ten documents from Plaintiff.

    Subsequently, Plaintiff filed this suit claiming that Defendant failed to establish that the documents are being rightfully withheld in full under FOIA Exemptions 1 and 3. Defendant has

filed for summary judgment contending that FOIA Exemptions 1 and 3 prevent disclosure of the requested documents.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court GRANTS Defendant's motion for summary judgment. The Court concludes that the documents are exempt from FOIA based on Exemptions 1 and 3.

## I. BACKGROUND

In her FOIA request, Plaintiff seeks ten classified documents found in the "Central Intelligence Agency: Group 263: Records of the Grombach Organization" for use in connection with a biography on Tibor Eckhardt. Def.'s Statement of Material Facts, ECF No. 11, ¶ 1. The record group in which the ten requested documents are located consists of records accessioned to Defendant from the CIA. *Id.* at ¶ 3. Due to their classification status, the requested documents are designated as restricted access and are not available to the public. *Id.*

Defendant consulted with the CIA, the agency with declassification authority, to determine whether or not the documents could be declassified and access could be provided to Plaintiff. *Id.* at ¶ 4. The CIA informed Defendant that the release of the ten documents should be denied in their entirety based on FOIA Exemptions 1 and 3. *Id.* at ¶ 6. Defendant, in turn, informed Plaintiff that the documents relating to Plaintiff's FOIA request would be withheld in their entirety pursuant to FOIA Exemptions 1 and 3. *Id.* at ¶ 7.

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. for Summary Judgment, ECF No. [11] ("Def.'s Mot.");
- Pl.'s Mem. Of Points and Authorities in Opp'n to Def.'s Mot. for Summary Judgment, ECF No. [12] ("Pl.'s Opp'n");
- Reply Mem. In Support of Def.'s Mot. for Summary Judgment, ECF No. [14] ("Def.'s Reply");

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

After being informed that her requested documents would not be disclosed, Plaintiff appealed the decision to withhold the ten documents in their entirety. *Id.* at ¶ 10. Following receipt of the appeal, Defendant re-consulted with the CIA regarding the exemptions to FOIA. But, prior to Defendant's response to Plaintiff's appeal, Plaintiff filed this lawsuit asking the Court to review the withholding and to compel Defendant to release at least some of the ten requested documents. Declaration of David J. Mengel, ECF No. 11-1, ¶¶ 18-19. Subsequently, Defendant moved for summary judgment.

## II.     LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are ... exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224,

1227 (D.C. Cir. 2008) (internal quotation marks omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (internal quotation marks omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Plaintiff does not challenge the adequacy of Defendant's search for responsive records to Plaintiff's FOIA request. As such, the sole issue before the Court is whether or not the ten undisclosed documents regarding the Grombach Organization fall under FOIA Exemptions 1 and 3. Considering the arguments of the parties, the Court concludes that the documents fall under FOIA Exemptions 1 and 3 and were rightfully withheld.

Exemption 1 provides that agencies may withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The parties agree that the relevant Executive Order for the purposes of Defendant's Exemption 1 withholding is Executive Order 13,526. Pl.'s Opp'n, ECF No. 12, 6; Def.'s Mot., ECF No. 11, 14. Under Executive Order 13,526, information is considered for classification if it falls within one or more of eight enumerated categories. As is relevant here, information can be considered for classification if its "disclosure could reasonably be expected to cause identifiable or describable damage to the national security" and it pertains to "intelligence activities (including covert action), [or] intelligence sources or methods." 75 FR 707, 1.4(c).

To support its withholding, Defendant submitted the Declaration of Antoinette B. Shiner, the Information Review Officer for the CIA. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) (explaining that "[t]he significant of agency affidavits in a FOIA case cannot be underestimated"). In her Declaration, Ms. Shiner explained that the documents in their entirety should be exempt under this section of the Executive Order because "[n]ine of the ten records referred by NARA contain detailed information about human sources, which could clearly and demonstrably reveal their identities; and all of the documents contain information that could reveal an intelligence method in active use." Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 11. According to Ms. Shiner, the release of the documents concerning human sources risks damage to national security because the documents "contain lists of intelligence sources, which include sufficient identifying information to compromise the sources and their sub-sources, including nationalities, professions, reporting specialties, locations, and activities they engaged

5

in on behalf of the CIA." *Id.* at ¶ 12. Not only could the release of this information risk "[t]he safety and welfare of the [named] source[s]," but disclosure could also "hamper the cooperation of other sources, which can have a serious effect on the CIA's ability to continue to recruit and run sources." *Id.* at ¶¶ 12-13. Ms. Shiner further explained that the release of information about intelligence methods risks damage to national security because the documents "contain information about intelligence methods currently used to recruit, vet, handle, train, and assess intelligence sources; as well as detailed information about a cover mechanism currently used by the CIA to protect the identities of covert officers." *Id.* at ¶ 14. The disclosure of this information "would likely impair the CIA's ability to continue to collect intelligence and conduct operations." *Id.* Disclosure could also allow foreign adversaries to learn how the CIA operates and "take measures to hide their activities from the CIA." *Id.* Accordingly, these records concerning intelligence sources and methods are of a nature to qualify for protection under FOIA Exemption 1 through Executive Order 13,526.

However, under the applicable Executive Order, all records are automatically declassified after 50 years, and the records at issue in this case are all more than 50 years old. 75 FR 707, 3.3(h). Despite the 50-year declassification requirement, the CIA has determined that these records should remain classified based on two exceptions to the 50-year declassification requirement, both relating to national security.

First, documents are exempted from the 50-year declassification requirement if the records would "clearly and demonstrably" reveal the identify of a confidential human source or intelligence source. 75 FR 707, 3.3(h)(1). Based on Ms. Shiner's Declaration, at least some of the documents would fall under this exception to the 50-year declassification requirement as at least nine of the requested documents contain detailed and identifying information about human

6

sources. *See* Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 11 ("[n]ine of the ten records referred by NARA contain detailed information about human sources, which could clearly and demonstrably reveal their identities").

Second, under Section 3.3(h)(2) of the Executive Order, "in extraordinary cases" agency heads may "propose to exempt additional specific information from declassification at 50 years." 75 FR 707, 3.3(h)(2). The CIA has exempted specific information from the 50-year declassification requirement through its 2012 Declassification Guide which was approved by the Interagency Security Classification Appeals Plan as required. *Id.* at 3.3(j) (requiring approval before agency heads exempt specific information from the 50-year declassification requirement). The CIA Guide "exempts select sensitive information that could reveal, among other things, an intelligence method in active use, including the methods used for intelligence source recruitment, vetting, handling, training, and assessing; and the details of the cover mechanisms used by the CIA to protect the identities of covert officers." Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 10. Accordingly, even those documents which may not fall under the first exception to the 50-year declassification requirement would fall under this exception as all of the requested documents contain information with the potential to reveal an intelligence method actively used. *See* Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 11("all of the documents contain information that could reveal an intelligence method in active use").

In addition to FOIA Exemption 1, Defendant claims that the documents are rightfully withheld under FOIA Exemption 3. Exemption 3 applies to matters that are "specifically exempted from disclosure by [another] statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes

particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Here, Plaintiff's requested documents were withheld pursuant to the National Security Act which provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The National Security Act qualifies as an Exemption 3 statute. *See Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 180 (1985); *see also Am. Civil Liberties Union*, 628 F.3d at 619. And, as has already been explained, disclosure of the information in Plaintiff's requested documents "would reveal specific sources and methods of intelligence collection … [such as] specific sources of foreign intelligence and/or certain intelligence techniques that are still in use by the Agency." Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 18. Accordingly, the documents withheld from release also qualify for withholding under Exemption 3.

Despite the above discussion, Plaintiff argues that Defendant has not satisfied its burden for withholding the requested documents under Exemptions 1 or 3. Plaintiff contends that, because Ms. Shiner's Declaration lacks detail and specificity as to how broadly Defendant is defining "human source" and "intelligence method," the Court should deny Defendant's motion for summary judgment. *See* Pl.'s Opp'n, ECF No. 12, 7-9. Plaintiff urges the Court to "exercise a reasonable degree of caution and skepticism in the CIA's assessment of what qualifies as a human source or intelligence method." *Id.* at 7.

Plaintiff cites two out-of-circuit district court opinions in support of her argument that the Court should deny Defendant's motion due to a lack of specificity as to the breadth of Defendant's definitions of "human source" and "intelligence method." First, in *Navasky v. Central Intelligence Agency*, 499 F. Supp. 269 (S.D.N.Y. 1980), the court rejected the CIA's

argument that information regarding authors, publishers, and books involved in clandestine propaganda activities constituted intelligence sources and methods. 499 F. Supp. at 275. And, in *American Civil Liberties Union v. Department of Defense*, No. 04-4151, 2009 U.S. Dist. LEXIS 128728 (S.D.N.Y. Dec. 29, 2009), the court concluded that two Office of Legal Counsel memoranda regarding CIA activities should not be withheld as they constituted a "source of authority" rather than an "intelligence method." 2009 U.S. Dist. LEXIS 128728, at *4.

Neither case is persuasive to the Court. This case does not involve information about authors, publishers, and books involved in propaganda activities. Nor does this case involve memoranda produced by the Office of Legal Counsel. Instead, this case involves ten classified documents accessioned to Defendant from the CIA regarding a secret American intelligence operation.

Defendant has produced evidence showing that disclosure of the requested documents would reveal identifying information about human sources as well as information about intelligence methods still in active use. Defendant detailed many ways that the disclosure of the requested documents risks damage to national security. Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶¶ 12-18. For example, Defendant's proffered Declaration explained that the requested documents contain "sufficient identifying information to compromise the sources and their sub-sources, including nationalities, professions, reporting specialties, locations, and the activities they engaged in on behalf of the CIA." *Id.* at ¶ 12. The disclosure of the documents "could reveal the identity of the source and his or her affiliation with the CIA" which would place the sources in danger and could make it more difficult for the CIA to retain sources in the future. *Id.* at ¶¶ 12-13. The Declaration further explained that the documents at issue "contain information about the intelligence methods currently used to recruit, vet, handle, train, and assess intelligence

9

sources; … [and, d]isclosure of these details would likely impair the CIA's ability to continue to collect intelligence and conduct operations." *Id.* at ¶ 14.

"[I]n the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotations omitted). Given "the special deference owed to agency affidavits on national security matters," the Court is not prepared to find that Defendant was wrong to withhold the requested documents based solely on Plaintiff's unsupported suspicions and vague challenges. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1126 (D.C. Cir. 2007). Accordingly, for the foregoing reasons, the Court concludes that the documents which Plaintiff requested under FOIA were rightfully withheld under FOIA Exemptions 1 and 3.

The Court must make a separate finding as to whether any portion of the ten documents withheld in their entirety could have been segregated and released. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999). "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s]." *Roth v. U.S. Dep't of Justice*, 643 F.3d 1161, 1167 (D.C. Cir. 2007) (internal quotation marks omitted). Having reviewed the Declaration by Ms. Shiner, the Court is satisfied that no reasonably segregable non-exempt information has been withheld. According to Ms. Shiner, the CIA conducted a "document-by-document and line-by-line review and determined that no reasonably segregable non-exempt information [] could be released … without jeopardizing classified and statutorily-protected material." Declaration of Antoinette B. Shiner, ECF No. 11-3, ¶ 19. In her Declaration, Ms. Shiner explained the method why which the CIA determined that no non-exempt information was segregable and explained

why the documents needed to be withheld in their entirety. Plaintiff provides the Court with no reason to question the veracity of this Declaration. Accordingly, the Court is satisfied that no segregable non-exempt information could be released from Plaintiff's requested documents. *See Hodge v. Fed. Bureau of Investigation*, 703 F.3d 575, 582 (D.C. Cir. 2013) (explaining that an agency is entitled to a presumption that it complied with the requirement to release all segregable information).[2]

### IV. CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff's requested documents were rightfully withheld under FOIA Exemptions 1 and 3. Accordingly, the Court GRANTS Defendant's motion for summary judgment. A separate order accompanies this Memorandum Opinion.

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[2] Plaintiff alternatively requests that "this Court conduct an *in camera* review of at least a random sampling (if not the entirety) of the 733 pages at issue to satisfy for itself that the segregability requirements have been met as a matter of law." Pl.'s Opp'n, ECF No. 12, 9. But, in its discretion, the Court concludes that in camera review is unnecessary based on the record before the Court and the specificity of Defendant's Declaration. *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (explaining that "[i]f the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents" (internal quotation marks omitted)).